IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Respondent/Plaintiff,<br><br>vs.<br><br>CHRISTOPHER A. RAMIREZ<br>Petitioner/Defendant. | §<br>§<br>§<br>§  CRIM. NO. H-06-380<br>§  CIVIL. NO. H-14-413<br>§<br>§<br>§ |

**UNITED STATES' MOTION TO DISMISS PETITIONER'S
UNTIMELY §2255 MOTION AND, ALTERNATIVELY,
MOTION FOR EXTENSION OF TIME TO RESPOND**

Petitioner Christopher A. Ramirez ("Ramirez") has filed an untimely motion pursuant to 28 U.S.C. §2255. The United States ("the Government") by and through the United States Attorney for the Southern District of Texas, files its Response and Motion to Dismiss Ramirez' §2255 Motion as untimely and not subject to equitable tolling, and, alternatively, if this Court finds that the statute of limitations should be equitably tolled the Government moves for an extension of time to file a motion for summary judgment based on the plea agreement waiver and on the issues Ramirez has raised in his §2255 motion. In support, the Government respectfully shows the Court the following:

1

## I.

## **JURISDICTION**

Ramirez challenges the judgment of conviction and sentence imposed by this Court (Rosenthal, J.) on March 25, 2008 (D.E.199), entered March 31, 2008 (D.E. 100).[1] The court of appeals dismissed the appeal as frivolous on July 6, 2009. (D.E. 126). Ramirez did not file a petition for certiorari in the Supreme Court. Ramirez' judgment thus became final on November 4, 2009, when the time to file for certiorari expired. *See Clay v. United States*, 537 U.S. 522, 527 (2003)   More than four years after the judgment became final, Ramirez filed the instant §2255 Motion on or about February 10, 2014. (D.E. 151 (entered February 19, 2014); Civil Action No. H-14-413).

This Court possesses jurisdiction over both the parties and the subject matter of this action, pursuant to 28 U.S.C. § 2255, but should dismiss the §2255 motion as time-barred, as discussed below.

---

[1] "D.E." refers to the docket entry in **Criminal No. H-06-380**, styled *United States of America v. Ramirez*, in the Houston Division of the United States District Court for the Southern District of Texas.

## II.

## STATEMENT OF THE CASE

**A. Course of Proceedings and Disposition Below**

On October 18, 2006, Ramirez was charged by a federal grand jury in the Houston Division of the Southern District of Texas, in a seven-count indictment, with being a felon in possession of firearms, in violation of 18 USC §§ 922(g)(1) and 924(a)(2) (count 1); possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5861(d) and 5871 (count 2); **aiding and abetting the possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2 (count 3)**; possession with intent to distribute tetrahydrocannabinol, in violation of 21 U.S.C.§84l(a)(l) and (b)(l)(C) (count four); possession with intent to distribute less than 50 kilograms of marijuana, in violation of 21 U.S.C. §84l(a)(l) and (b)(l)(D) (count 5); **using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(l)(A) (count six)**; and conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 84l(a)(l) and (b)(l)(B) (count 7). (D.E. 1).

On June 21, 2007, Ramirez pleaded guilty to counts 3 and 6 of the indictment pursuant to a plea agreement in which he waived his rights to appeal or collaterally

attack his sentence. (D.E. 112, p. 19-20; D.E. 56, ¶¶1 & 9 (plea agreement)). On March 25, 2008, the Court sentenced Ramirez to 151 months as to count 3 to be followed by a consecutive term of 60 months as to count 6, for a total of 211 months. (D.E. 100, p. 2).

Ramirez' appellate counsel filed a timely brief in accordance with *Anders v. California*, 386 U.S. 738 (1967) and moved for leave to withdraw. (D.E. 126). On July 6, 2009, the court of appeals found that its "independent review of the record and counsel's brief discloses no nonfrivolous issue for appeal," granted counsel's motion for leave to withdraw, and dismissed the appeal. *Id*. Ramirez did not file a petition for certiorari in the Supreme Court.

**Ramirez' judgment became final on November 4, 2009**, when the time he had to file for certiorari expired. *See Clay v. United States*, 537 U.S. 522, 527 (2003) ("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.").

Ramirez filed the instant §2255 Motion on or about February 10, 2014, more than four years and three months after the judgment was final, and more than three years after the statute of limitations had expired.[2] *See* 28 U.S.C. §2255(f); (D.E.

---

[2]Ramirez signed and verified the 2255 Motion on February 10, 2014. (D.E. 151, p. 14).

187 (entered September 4, 2013); Civil Action No. H-14-413.

## B.  Statement of Facts Underlying the Conviction and Sentence

1 <u>Offense conduct</u>.-

The Plea Agreement contained the following factual basis for the plea:

### Factual Basis for Guilty Plea

16. Defendant is pleading guilty because he/she is guilty of the charges contained in Counts THREE and SIX of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish the Defendant's guilt:

> On September 13, 2006, Houston Police Department Officer Brent Batts, in an undercover capacity, arranged a purchase of four ounces of methamphetamine for $4,400.00 with a female identified as Natalie Salinas. During previous undercover purchases of methamphetamine from Salinas, officers identified 7357 Stanwick, Houston, Southern District of Texas, as the possible location for her drug supplier. On September 13, 2006, after Batts had set the deal up with Salinas, surveillance officers at 7357 Stanwick observed Salinas arrive at that location and then leave with a male later identified as Christopher Alan Ramirez and another individual later identified as Craig Johnson. Approximately 30 minutes later, Salinas, Ramirez, and Johnson arrived at the predetermined meeting location at a Chili's Restaurant on the 10500 block of the Northwest Freeway in Houston, Southern District of Texas. When Ramirez and Salinas approached Batts in the restaurant, they engaged in conversation. Ramirez affirmed to Batts

---

There is no other certification supporting a finding that Ramirez deposited the Motion into the prison mailing system any earlier.

that he (Ramirez) was capable of getting one pound of methamphetamine. Ramirez also affirmed that he sold ecstasy, powder cocaine, and marijuana. When Batts asked Ramirez if Ramirez had the prearranged four ounces of methamphetamine, Ramirez stated that it was in Salinas's purse and then ordered Salinas to show Batts the methamphetamine. When Salinas opened her purse, Batts observed two large clear bags with a crystal like substance within. After Batts left to use the restroom, he gave a prearranged bust signal and Salinas and Ramirez were arrested. During a search incident to arrest, officers discovered a loaded Glock, mode 126, 9 millimeter caliber pistol, serial number GPY832 in the defendant's left front shorts pocket. Officers also discovered approximately 116 grams of suspected methamphetamine from the purse of Salinas. After Salinas was read her Miranda warnings, she waived them and spoke with officers. Salinas stated that after arranging the narcotics transaction with undercover officer Batts, Salinas went to Ramirez's house and then accompanied him to the transaction with Batts. Salinas stated that Ramirez retrieved the four ounces of methamphetamine from his residence and handed it to her, requesting that she put the methamphetamine in her purse.

On September 15, 2006, S/ A Anthony Johnston and Graham Wright of the Bureau of Alcohol, Tobacco, Firearms, and Explosives advised Ramirez of his Miranda warnings and conducted an interview. Ramirez stated that he had been selling drugs for 1 1/2 to 2 ½ years. Ramirez stated that he had the Glock pistol with him to "scare people" but that he had it on September 13, 2006 for safety and protection. Lab results revealed that the substance found in Salinas's purse was in fact 110.9 grams of a mixture and substance containing methamphetamine. The Glock pistol found on the defendant was found to meet the statutory definition of firearm found in Title 18, U.S. C. Section 921(a)(3). A criminal history check of the defendant revealed at least two prior felony convictions punishable by more than one year imprisonment, including Possession of 3,4 methylenedioxy methamphetamine, on June 5, 2001 in the 262nd District Court of Harris County, Texas.

D.E. 56, ¶16 (pp. 8-10).

2. The Plea Agreement

In the plea agreement, Ramirez agreed to plead guilty to counts 3 and 6. (D.E. ,). Ramirez also waived his rights to appeal and collaterally attack his sentence, as follows:

### Waiver of Appeal

> 9. Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant agrees to waive the right to appeal his convictions and the sentences imposed or the manner in which it was determined on any grounds set forth in Title 18 U.S.C. § 3742. Additionally, *the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his conviction or sentence by means of any post-conviction proceeding.*

D.E. 56, ¶9 (pp4-5)(emphasis added). The plea agreement also contained the following agreement:

> In the event the defendant files a notice of appeal following the imposition of the sentence, the United States will assert its rights under this agreement and seek specific performance of this waiver.

*Id.* In the plea agreement addendum, attached to the plea agreement, Ramirez also signed the following:

> I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. *I have read and carefully reviewed every part of this plea agreement with my attorney.*

> ***I understand this agreement and I voluntarily agree to its terms***.

*Id.*, p. 14 (emphasis added).

### 3. Rearraignment

At the rearraignment hearing on June 21, 2007, Ramirez was sworn (D.E. 112, p. 3) and the Court gave Ramirez the admonishments required by Rule 11. Ramirez responded that he understood each admonishment, including that under the statute he faced a prison sentence of five years minimum on count 6, the gun count, which had to run consecutively to any sentence on count 3, the drug count. *Id.*, p. 17.

The Court also admonished him about his plea agreement waiver of rights to appeal and collaterally attach the judgment. The Court noted:

> THE COURT: Under the plea agreement, you're really stuck, because you're giving up your right to file an appeal or a later challenge to the sentence that I impose, except in some very narrow circumstances. Do you understand that that means that whatever sentence you get, particularly if it is within the statute and within the guidelines, there would be nothing you could do about it?
>
> THE DEFENDANT: Yes, ma'am.

*Id.*, p. 19-20. The Court noted that the factual basis for the plea was contained on pages 8, 9, and 10 of the plea agreement, and in response to the Court's questions, Ramirez acknowledged that he had gone over the factual basis in the plea agreement with his counsel and that everything in the factual basis about him was true. *Id.*, p. 24.

Ramirez pleaded guilty to counts three and six and the Court accepted the plea, finding that he was pleading of his own free will, nobody had threatened or coerced him of promised him anything other than what was in the plea agreement to get him to plead guilty. *Id.*, p. 24-25. Ramirez signed the plea agreement under oath and acknowledged that he had read it and the matters in the plea agreement were true and correct to the best of his knowledge. *Id.*, p. 25. The Court made the following findings:

> THE COURT: These are the Court's findings with respect to Mr. Ramirez's guilty plea. As earlier stated, he is clearly mentally competent and capable of entering an informed plea. I now find that the plea is supported by independent facts that establish all the elements of the offense. I find that the plea of guilty is voluntarily, freely, and knowingly made, that Mr. Ramirez understands the nature of these proceedings and the consequences of his plea of guilty, and that he has made an informed plea. I accept your plea, Mr. Ramirez, and I find you guilty as charged in Counts 3 and 6 of the indictment.

*Id.*, p. 26.

4. <u>PSR</u>

In the section of the PSR titled "Offense Level Computations" the PSR first noted that "Count 6, a violation of 18 USC §924(c)(1), is excluded from the operation of the grouping rules, as well as the guideline adjustments, pursuant to USSG §3D1.1(b) and USSG §2K2.4, respectively, as this statute mandates a consecutive sentence." The PSR then computed the Guidelines for Count 3.

Using the 2006 edition of the Guidelines Manual, the PSR began with a base offense level of 32, pursuant to USSG 2D1.1, the guideline relevant to a violation of 21 USC 841(a)(1), (b)(1)(B). With a three level adjustment for a timely acceptance of responsibility, the total offense level was 29. PSR ¶41-50.

Ramirez' lengthy criminal history yielded a criminal history score of 16. PSR ¶70. Because the instant offense was committed less than two years following Ramirez' release from custody on May 10, 2005, two additional points were added pursuant to USSG 4A1.1(e). The total criminal history points was 18 which established a criminal history category of VI. PSR ¶72. A total offense level of 29 and a criminal history category of VI resulted in an advisory guideline range for count three of 151 to 188 months. PSR ¶116. The PSR noted that "[t]his does not include the 5-year consecutive term on count 6." *Id.*

5. The Sentence.

At the sentencing hearing, the Court adopted the advisory guideline range calculated by the PSR, D.E. 114, p. 2-3, and sentenced Ramirez to 151 months in custody on count 3 and 60 months on count 6, to be served consecutively as required by the statute, for a total term of 211 months. *Id.*, p. 22.

### III.

### MOTION TO DISMISS

The Government moves this Court to dismiss Ramirez' §2255 motion with prejudice, for the reasons discussed below, on the ground that the Government's motion and the record, supported by the applicable law, conclusively shows that no relief is appropriate because the motion is untimely filed and may not proceed under the doctrine of equitable tolling.

A.  **Ramirez' §2255 motion is untimely under any subsection of 2255(f).**

Ramirez' §2255 Motion is subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA provides a one-year limitation period for filing federal habeas corpus petitions. The provisions of 28 U.S.C. §2255 set forth four different scenarios that start the running of the one-year limitations period:

> The limitations period shall run form the latest of -
>
> ***(1) the date on which the judgment of conviction becomes final***;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on

> collateral review; and
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255(f).

In the section of the 2255 form titled "Timeliness of Motion", Ramirez asserts "FILED UNDER 28 USC 2255(F)(3)," without explanation. (D.E. 151, p. 13). Ramirez argues in his memorandum in support of his 2255 motion, titled "Motion Seeking Habeas Corpus Relief by Way of 28 USC 2255 (e) and (f)(3)" (D.E. 152), that *Watson v. United States*, 552 U.S. 74, 128 S.Ct. 579 (2007) (decided December 10, 2007) stated a "new rule of law" that Ramirez asserts applies to his conviction on count 6 and renders him "actually innocent" of the crime with which he was charged, that is, using or carrying a gun.

Ramirez' reference to 2255(f)(3) may be liberally construed to assert that the *Watson* decision recognized a new right recognized by the Supreme Court that was made retroactively applicable to cases on collateral review and triggered the running of the one-year statute of limitations on the date on which the Supreme Court recognized the right, that is, on the date *Watson* was decided. Accordingly, Ramirez' assertions may be liberally construed to assert that the one-year statute of limitations began to run on December 10, 2007, the date on which *Watson* was

decided.

### 1. *Watson* is distinguishable from, and therefore does not apply to, Ramirez' case under 2255(f)(3).

Section 924(c) provides for a mandatory minimum sentence of five years for any person "who, during and in relation to any ... drug trafficking crime ... ***uses or carries*** a firearm, or who in furtherance of any such crime, **possesses** a firearm...." 18 U.S.C. §924(c)(1)(A) (2010). The "*uses*" prong of § 924(c) was the subject of *Watson v. United States*, 552 U.S. 74, 128 S.Ct. 579 (2007), in which a unanimous Court held that **a defendant who receives a gun as payment for drugs does not "use" a gun for the purposes of §924(c)**. *Id*. at 83, 128 S.Ct. 579.

Because the defendant in *Watson* was charged under only the "*use*" prong of §924(c),[3] the Court did not reach the question of whether he could have been found guilty of *carrying*, or *possessing* a gun "in furtherance of" his drug trafficking. *Id*.

Moreover, Watson was convicted of ***using*** a gun in relation to a drug trafficking offense, based on facts ***which involved trading drugs for the gun***. In 2009, Ramirez was convicted of ***carrying*** a gun in relation to a drug trafficking

---

[3] Congress amended 18 U.S.C. § 924(c) in 1998 for the specific purpose of expanding the statute to cover passive possession of a firearm in furtherance of a covered felony. *See United States v. O'Brien*, —— U.S. ——, 130 S.Ct. 2169, 2179 (2010) (noting that the 1998 addition of the "possession" prong to the statute was "a direct response to this Court's decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501 (1995) ... that the word 'use' in the pre-amendment version of § 924 'must connote more than mere possession' "

offense based on facts *which involved selling drugs for money*. *See* Rearraignment & Plea Agreement (D.E. 56, ¶16, p, 10 ("Ramirez stated that he had the Glock pistol with him to "scare people" but that he had it on September 13, 2006 for safety and protection.")

Based on these distinctions, *Watson* clearly does not state a new "right" that is relevant to a charge of **carrying or possessing** a gun in furtherance of a drug trafficking offense that involved a drugs-for-money transaction. *Watson* is distinguishable from Ramirez' case on this basis and does not confer any new "right" on Ramirez that makes him "actually innocent" of carrying a gun in the course of drug trafficking involving drugs-for-money. Accordingly, *Watson* does not serve to delay the beginning of the one-year limitations period under 2255(f)(1).

Even if *Watson* did apply, Ramirez has failed to bring a timely motion under 2255(f)(3). Ramirez did not file his 2255 motion until February 10, 2014, more than six years after *Watson* was decided. So even if *Watson* did announce some new "right" that applies to Ramirez' case, Ramirez was still required to file his 2255 motion within one-year of the date of the decision. He did not. Accordingly, Ramirez' 2255 motion would be untimely under 2255(f) because more than a year has elapsed since *Watson* was decided.

> **2.  Ramirez' 2255 motion is untimely under the only subsection of 2255(f) that applies to Ramirez: 2255(f)(1).**

Ramirez does not argue any special facts which would entitle his case to fall under any subsection other than §2255(f)(1). As discussed above, Ramirez' judgment became final, on November 4, 2009. This is the date that the one-year limitation began to run with respect to Ramirez' motion. Ramirez filed his motion for collateral relief pursuant to §2255 no earlier than February 10, 2014, more than three years and three months after the one-year statute of limitations had expired. Ramirez motion is time-barred.

## C. The doctrine of equitable tolling does not apply.

AEDPA's filing provision is not jurisdictional, but is a statute of limitations which can be equitably tolled. *See Fisher v. Johnson*, 174 F.3d 710, 711 (5th Cir. 1999). The United States Fifth Circuit Court of Appeals has held that, in rare and exceptional circumstances, the AEDPA's statute of limitations can be equitably tolled. *See Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998). However, "equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir.1999) (internal quotes and citations omitted

> Equitable tolling is not available if the petitioner does not act diligently in

attempting to meet the one-year limitations deadline. *Coleman v. Johnson*, 184 F.3d at 402. Petitioner bears the burden of proof to establish entitlement to equitable tolling. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir.2002).

Ramirez does not assert that he is entitled to equitable tolling because he "has pursued his rights diligently." *Id*. Ramirez provides no explanation for his lack of diligence to pursue a motion to vacate his sentence pursuant to 28 U.S.C. §2255. Nor does he explain whether and, if so, how he was "prevented in some extraordinary way" from asserting his rights to file a habeas motion before the statute of limitations expired more than three years before he finally filed such a motion. Unexplained delays do not evince due diligence or rare and extraordinary circumstances entitling Ramirez to equitable tolling. Ramirez has failed to show that the doctrine of equitable tolling applies to the facts of his case. Proceeding *pro se* is alone insufficient to equitably toll the AEDPA statute of limitations. *United States v. Petty*, 530 F.3d 361, 364-65 (5th Cir. 2008); *Lookingbill v. Cockrell*, 293 F.3d 256, 264 n. 14 (5th Cir.2002). Further, the lack of legal training, ignorance of the law, and unfamiliarity with the legal process are insufficient reasons to equitably toll the AEDPA statute of limitations. *Felder v. Johnson*, 204 F.3d 168, 171-72 (5th Cir. 2000; *see also Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir.1999).

Ramirez was required to follow the applicable procedural rules governing AEDPA motions. He failed to do so. Accordingly, his motion is time-barred under § 2255(f)(1) and is subject to summary dismissal.

## IV.

## ALTERNATIVE MOTION FOR EXTENSION OF TIME

Alternatively, if this Court finds that the statute of limitations should be equitably tolled, the Government moves for an extension of time to file a motion for summary judgment based on the plea agreement waiver and on the issues Ramirez has raised in his §2255 motion.

    Respectfully submitted,

    KENNETH MAGIDSON
    United States Attorney

    By:  /s/ Mary Jane Harmon
    MARY JANE HARMON
    Assistant United States Attorney
    Indiana Bar No. 14259 49
    SDTX No. 14439
    Attorney for Respondent
    1000 Louisiana, Ste. 2300
    Houston, Texas 77002
    (713) 567-9727
    Facsimile: (713) 718-3302

## **CERTIFICATE OF SERVICE**

      I certify that a true and correct copy of the above Motion was electronically filed with the United States District Clerk for the Southern District of Texas and sent by certified mail, return receipt requested, on April 23, 2014, to the following:

Christopher Alan Ramirez
Reg. No. 66213-179
Beaumont USP
P.O. Box 26030
Beaumont, TX 77720

                    /s/ Mary Jane Harmon
                  **Mary Jane Harmon**
               Assistant United States Attorney